CMichelle R. Burrows, OSB No. 86160
Attorney at Law
22586 SW Park St.
Sherwood OR 97140
503/241-1955
503/241-3127 fax
Michelle.r.burrows@gmail.com

Jason G. Short, OSB No. 003860
Attorney at Law
12755 SW 69th Avenue, Suite 200
Portland, OR 97223
(503) 747-7198 - Phone
(503) 747-2951
Jason@Shortlawgroup.com

      Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| JASON SERVO ) | |
| ) | No. |
| Plaintiff, ) | |
| ) | COMPLAINT |
| v. ) | Due Process, ADA, Breach of |
| ) | Contract |
| Chief Craig Juninger, Lt. Jeff Hansen, ) | |
| Capt. Cummins, City of Gresham, a political ) | |
| Subdivision of the State of Oregon, the Gresham ) | |
| Police Officers Assn. ) | |
| ) | |
| Defendants. ) | |

1.

This action is brought for violations of Plaintiffs due process rights in the termination from employment and violations of his rights protected under the American's with Disabilities Act.

PARTIES

2.

Plaintiff, Jason Servo (hereinafter Servo), was a police officer with the City of Gresham at the time of the events alleged herein. He was a member of the Gresham Police Officers Association.

3.

Defendant Chief Craig Junginger (hereinafter Junginger) was at all times the Chief of Police for the City of Gresham. He is an official policymaker for the City of Gresham. He is sued in his individual capacity.

4.

Defendant Lieutenant Jeff Hansen (hereinafter Hansen) was at all times a police officer working for the Gresham Police Department and is sued in his individual capacity.

5.

Defendant Captain Dale Cummins (hereinafter Cummins) was at all times a police officer working for the Gresham Police Department and is sued in his individual capacity.

6.

Defendant City of Gresham (hereinafter COG) is a municipal corporation in the State of Oregon

7.

Defendant Gresham Police Officer's Association (hereinafter GPOA) is an organized labor union representing police officers. They are responsible for enforcing all rights and responsibilities under the collective bargaining agreement on behalf of all members.

8.

Plaintiff is entitled to his attorney fees pursuant to 42 U.S.C. 1988.

## JURISDICTION

9.

This court has jurisdiction over Plaintiff's claims of violations of federal constitutional rights under 28 U.S.C. §§1331 and 1343.

10.

Venue is proper under 28 U.S.C.§1391(b), in that one or more of the defendants reside in the District of Oregon and Plaintiff's claims for relief arose in this district.

11.

All defendants have acted under color of state law at all times relevant to this complaint.

## GENERAL ALLEGATIONS

12.

Plaintiff was a police officer and detective with Gresham Police Department (hereinafter GPD) for approximately 12 years at the time of the events describe in this Complaint. He had no disciplinary record.

13

On January 28, 2011 Plaintiff was on duty and attended a GPD firearm training in Troutdale, Oregon. He attended with several other GPD officers. The training lasted all day.

14.

After the training and while off duty Plaintiff and his fellow officers went to the nearby McMeniman's Edgefield. All the officers ate dinner and had several alcoholic drinks. This was a common practice among GPD officers and had become an inherent part of the culture of the GPD. Many of the officers carried their badges and weapons while in the bar. This was also in keeping with the department custom and policy.

15

Plaintiff and several other officers became significantly intoxicated and impaired during the course of the evening. McMeniman's is a location with several on premises bars. The officers went to several of those bars.

16

During the course of the evening Plaintiff and some other officers became, involved in an encounter with other patrons and the security for the bar. Plaintiff admits he was intoxicated. In the Internal Affairs investigation unknown witness claimed Plaintiff reportedly showed his badge and gun in a manner which was perceived as threatening. The events of the evening were never clearly established and there are many conflicting statements from the witnesses and participants.

17

Due to the significant amount of alcohol he had consumed Plaintiff has no clear recollection of events that evening.

18

Plaintiff had driven to training that morning in a GPD official vehicle, a Chevrolet Blazer with several GPD issued items inside. Plaintiff drove that vehicle when he left McMenamins.

Plaintiff was intoxicated and too impaired to drive. The other officers who had been drinking with Plaintiff also drove away and were similarly intoxicated.

19

Inside the Blazer were weapons and investigative files. These were kept in unlocked boxes in the back of the Blazer. Plaintiff had previously requested lock boxes for his vehicle but had been denied by the department.

20

Plaintiff drove his vehicle into a ditch shortly after leaving McMenamins. No other individual was in the vehicle and no one was injured.

21

A Clackamas County Sheriff deputy responded to the scene. Based on Plaintiffs obvious intoxication the deputy conducted an investigation into Driving Under the Influence of Intoxicants including requesting the administration of field sobriety tests and a breath test. Plaintiff refused both. Certain investigators determined that the investigating deputy thought Plaintiff requested special consideration though Plaintiff did not specifically ask for it. The deputy issued Plaintiff a citation for DUII which is a misdemeanor.

22

On March 24, 2011 Plaintiff entered into the diversion program for the DUII. Diversion is a program wherein a person enters a guilty plea to the DUII. That plea is held in a deferred adjudication period for one year while the person completes the diversion requirements. If at the end of the one year diversion period the person has successfully completed all the requirements, the DUE is dismissed. Plaintiff fulfilled all of his commitments under the diversion program and his DUII was dismissed. He has no criminal record whatsoever.

23.

Prior to entry into the diversion program, and during the time of GDP's internal investigation, Plaintiff voluntarily entered an in-patient treatment program at Serenity Lane. During the internal investigation into this matter, Plaintiff was diagnosed as suffering from alcohol addiction. Although Plaintiff is an alcoholic he has not consumed any alcohol since January2011.. Plaintiff successfully completed his inpatient treatment and intensive outpatient and recovery support treatment through Serenity Lane. He successfully completed diversion.

24

Plaintiff was placed on administrative leave by the police department on February 1, 2011. He received notice of an intent to investigate him for the DUII arrest, and allegedly having unsecured weapons and case files in his vehicle on the night of the incident.

25

It may be the nature of police work but a noticeably higher than normal number of police officers have addiction issues. This is particularly true at GPD where several well known incidents of drinking, driving and on duty impairment have occurred. In each of those highly publicized incidents the police officer was not disciplined, charged criminally or terminated. This pattern and practice was the norm. The department did not respond with treatment or assistance to help the officer address his underlying stresses or addiction issues. GPD regularly and knowingly had detectives respond to a call when off duty after they had consumed alcohol.

26

On or about February 28, 2011 Plaintiff's leave was converted to unpaid leave and the Internal Affairs investigation started. Defendant Hansen conducted the investigation into the guns, records and DUII as violations of GPD policy. There was no specific GPD policy which

forbade the retention of weapons in an official vehicle when transporting the vehicle to and from official training. There was no existing GPD policy forbidding the transport of official police files in an official GPD vehicle.

27,

On April 19,.2011 and at the conclusion of the investigation Defendant Cummins issued a memorandum to Defendant Junginger making findings and conclusions, many of which were not supported by the evidence. Defendant Junginger had seen a previous version of the report and instructed Cummins to change the report and findings in order to justify termination. Specifically, Defendant Cummins made the following findings:

1. Servo misused his official department vehicle by driving it to dinner at McMenamins. Several other officers drove department issued vehicles to McMenamins and Servo had driven it to official training. There is little in the existing GPD rules or regulations indicating that the act of driving to McMenamins from official department approved mandatory training was not official. No other officer who drove their official vehicle to McMenamins was disciplined or investigated.

2. Servo possessed two confidential investigation books which Cummins described as "material presented for trial" with "extremely sensitive information". Cummins notes the possession of these notebooks in secured boxes in the department vehicle was a violation of General Order 13.4.3(F) which only requires officers to ensure "the confidentiality of the working copies". The homicide case which was the subject of the notebooks was closed and no longer open. All of the documents inside the notebooks were information which were public records or which had already been disclosed .

      3. Servo possessed a Colt Commando M4 assault rifle with Aimpoint sight, 4 magazines with 28 rounds of duty ammo each. Cummins does note that G.O. 4.30 does not cover this situation. He does however appear to argue what the "intention" of the Rifle Security G.O. means. He fails to note that Servo had taken the rifle to the range that day to qualify and fails to note that Servo requested a lock box for his rifle from the department and was denied.

28

Defendant Cummins further found that Plaintiff was in violation of a G.O. aimed at"unbecoming" conduct which generally govern all police officers. Defendant Cummins made findings of Servo's "conduct" at the bar by making credibility and factual determinations from a variety of wide ranging statements which were all themselves inconsistent and form no real pattern of what occurred. Defendant Cummins picked the version of the story he liked best and concluded that things had occurred despite extensive conflict between the various witnesses. These actions by Cummins are themselves a violation of department policy.

29

Defendant Cummins found that Plaintiff violated several General Orders by driving intoxicated and getting arrested. Servo does not contest this particular finding, but does dispute that this can be used to terminate him as he is afflicted with a significant disability recognized under the American's with Disabilites Act and Oregon law. Alcoholism is not only a disability but a mental disease or defect explained in the DSMIV.

30

Cummins found that Servo acted "unbecoming" during the investigation and custody. Cummins makes conclusions at conflict with the arresting officer and other witnesses present.

Cummins concludes on his own that Plaintiff asked for special consideration from the arresting deputy and that Servo was less than cooperative. This conflicts with the arresting officers own report. Cummins conclusions are not correct and appear not to comport with Lt. Hansen's belief. The basis for Cummins conclusion is not based on fact but appears to be his own personal opinion.

31.

Cummins also includes a so called "prior incident" as the basis to recommend termination. In that incident Servo was noted to smell of alcohol while on duty. He was not disciplined, not provided any services nor support from the department. In fact, the department's response to that incident was to cover it up and ignore it. The department in fact does that a lot with all officers suffering from addiction or other personal issues. The Department permits or allows officers to act in an official capacity in spite of addiction and offers no counseling, support or addiction intervention.

32

Cummins report conflicts with Lt. Hansen's investigative report and interviews in numerous particulars, yet despite that Cummins issues a written report recommending termination without any consideration of the underlying disability or the fact that virtually everything Servo was accused of was common practice amongst all officers. There is evidence Cummins was ordered by Junginger to make findings contrary to the evidence and the law.

33.

On April 26, 2011 Chief Junginger issued a Notice of Intent to Discipline. Junginger advised Plaintiff he was terminating employment and offered Servo the right to a pre-

disciplinary meeting. That meeting occurred and the Chief decided to terminate Servo. A GPOA representative was present at this meeting.

34

During the pre-disciplinary meeting Junginger advised Servo he was firing him because he had a misdemeanor conviction. This is false and represents a profound lack of knowledge about Oregon criminal law. Junginger also admitted he does not consider alcoholism to be a disability and further he does not believe there is such a thing as alcoholism, he believes it is a choice. Junginger testified under oath at a later administrative hearing as to these beliefs.

35

Despite his membership in the GPOA the union failed to adequately represent Plaintiff, failed to grieve his termination, failed to advocate for him with the Chief, failed to support the law and in many respects failed to provide fair representation in violation of the terms of the Collective Bargaining Agreement. The attorney for the Union advised Plaintiff that there was nothing that could be done and in fact, the union through their lawyer negotiated a secret deal between the union and the management without advising Plaintiff he had the right to his own counsel, without informing Plaintiff and in violation of the collective bargaining agreement.

36

During the time GPOA was negotiating secretly with Junginger they were acting as an agent of the City rather than a representative of Plaintiff. In meeting with the represented officer while passing along confidential information to the city they were not only in breach of the collective bargaining agreement but were acting in the role of the government and qualify as such under the state action rule.

36.

37.

As a result of his termination from employment, Plaintiff was subject to mandatory loss of his certification with the Department of Police Standards and Safety Training (DPSST). He filed an objection and request for hearing prior to the loss of his certification which was strenuously objected to by the City. Plaintiff lost his certification and could not become a police officer with any other department in the State of Oregon. He has lost a career.

**FIRST CLAIM FOR RELIEF:** Due Process 14th Amendment
Junginger, Cummins

38

Plaintiff realleges all previous matters alleged as if more fully set forth herein.

39

Plaintiff has a protected property right in his employment and further has the right to fair and just procedures prior to the loss of his job. This includes an objective and fair investigation based on the evidence and without any illegal or unconstitutional motive at issue. Plaintiff was covered by the rights of law and the Collective Bargaining Agreement in existence at that time.

40

Plaintiff was denied his rights to procedural due process in the following way:

1. Cummins made false statements of facts not supported by the interviews or evidence as a pretext to fire Servo.

2. Cummins created new rules which did not exist as a basis to find Servo violated specifically the rules on carrying weapons and investigative notebooks of resolved cases.

3. Cummins violated existing laws on official misconduct when he created false reports and submitting them in an official proceeding

4. Junginger violated law by ordering Cummins to write a false report, create facts, invent

rule violations and disregarded exculpatory evidence.

5. Junginger violated the law by intentionally ignoring a known and accepted disability of alcoholism.

6. Junginger used unconstitutional reasons for intervening with the investigation namely to force Servo out in order to save money on personnel.

7. Junginger false or incompetently concluded that Servo was convicted of any crime as a pretextual basis to fire Servo.

8. Junginger failed to considered nearly 12 years of honorable, exemplary and respected service by Servo as an officer and detective.

9. Junginger had secret meetings with the union to contrive a basis to terminate Servo.

41

As a result of the constitutional failures in process and right Plaintiff lost his job and future income, retirement and medical benefits all to his economic loss of $4,000,000.00. Plaintiff also incurred emotional damages, loss of reputation pain and anxiety of the loss of the profession he loved and was dedicated to all to his noneconomic loss of $2,000,000.

SECOND CLAIM FOR RELIEF: ADA
City of Gresham

42

Plaintiff alleges all matters previously alleged as if more fully set forth herein.

43

Plaintiff has been diagnosed as suffering from alcoholism which is presently in remission. At the time of his employment he suffered from alcoholism and received treatment for it. Alcoholism is recognized as a disability under the American with Disabilities

Act and Plaintiff is an "individual with a disability" as defined by 29 C.F.R. §§1630.2(h)-(j); 42 U.S.C. §12111(8) Plaintiff is disabled and due to that disability is limited in one or more major life activities. Such effects on a major life activity are substantial.

44.

Chief Junginger on behalf of the City of Gresham terminated Servo's employment solely because of his disability, alcoholism, in violation of the law. Jtmginger's admission he does not believe in alcoholism or that it is a disability is an admission for the City of Gresham.

45

As a consequence of the discrimination, Plaintiff lost his job and suffered pain, mental distress. As to the claims brought under the ADA, plaintiff is entitled to recover his attorney fees and costs. 42 U.S.C. § 12205

THIRD CLAIM FOR RELIEF: GPOA

14th Amendment Due Process Claim

46

Plaintiff realleges matters previously alleged as if more fully set forth.

47

Plaintiff is entitled to due process of law and shall not suffer the loss of property without procedural protections. Plaintiff's employment and certification are property interests recognized under the 14th Amendment and when the defendants violated the collective bargaining agreement and secretly worked with the city they deprived Plaintiff of his rights to fair and just process.

FOURTH CLAIM FOR RELIEF: Breach of Contract.

48

Plaintiff realleges all matters previously alleged herein.

49

The collective bargaining agreement between the City and the GPOA constitutes a binding contract which sets out all rights of member officers. It also places a duty of fair representation on the union and their representatives to adequately defend and represent

members who are subject to disciplinary proceedings.

50.

The Union and it's agent Makler violated the terms of the collective bargaining agreement in numerous particulars as well as the duty of fair representation in the following ways:

1. Failed to keep the confidences of Plaintiff as part of their active representation of him.
2. Negotiated secretly with the City to have him fired and made secret agreements not to grieve or object to the discipline
3. Failed to adequately assert the ADA and defenses for Plaintiff
4. Failed to represent his interests at pre-disciplinary hearings or Loudermill.
5. Failed to grieve the adverse employment actions including the termination;
6. Failed to honestly advise Plaintiff of matters being negotiated
7. Failed to respond to requests by Plaintiff to object or grieve;
8. Failed to represent Plaintiff fairly and in accord with the terms and conditions of the collective bargaining agreement.

WHEREFORE Plaintiff prays for judgment:

1. Against Defendants Junginger and Cummins for a violations of the Constitution in the unconstitutional investigation, findings and termination of Servo.
2. Against the City of Gresham for violations of the ADA committed by Junginger
3. Against the GPOA for violations of the Collective Bargaining Agreement and the duty of fair representation.
4. Against the GPOA for due process violations
5. Judgment for fair compensation for lost economic damages of $4,000,000 and non-economic damages of $2,000,000.
6. Attorney fees
7. Costs, disbursement and other relief as is just.

Dated this 25th day of April 2013.

Respectfully submitted,

/s/Michelle R. Burrows
 Michelle R. Burrows OSB8616
Attorney for PLaintiff