IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JASON SERVO,

   Plaintiff,

               3:13-CV-702-PK

               FINDINGS,
v.              RECOMMENDATION,
               AND ORDER

CHIEF CRAIG JUNGINGER, CAPT. DALE
CUMMINS, and CITY OF GRESHAM,

     Defendants.
_____

PAPAK, Magistrate Judge:

   Plaintiff Jason Servo, a former employee of the Gresham Police department, filed this

action against defendants Craig Junginger (the Chief of Police of the Gresham Police

Department), Dale Cummins (a Captain of the Gresham Police Department), Jeff Hansen (a

Lieutenant of the Gresham Police Department), the City of Gresham (the "City"), and the

Page 1 - FINDINGS, RECOMMENDATION, AND ORDER

Gresham Police Officers Association (the "union") on April 25, 2013. Servo moved to dismiss his own claims against Hansen on June 19, 2013, and on June 20, 2013, this court granted that motion with prejudice. Servo amended his complaint on June 21, 2013, thereby abandoning both his sole claim pled against the union and a claim of disability discrimination pled against the City under the Americans with Disabilities Act.

By and through his amended complaint, Servo alleges that the termination of his employment as a police officer by the City effective May 11, 2011, was unlawful, and in connection with that termination alleges the liability of defendants Junginger and Cummins (in their individual capacities only) under 42 U.S.C. § 1983 for the violation of his procedural due process rights under the Fourteenth Amendment, the liability of defendant the City under Section 1983 on a *Monell* theory for the violation of his procedural due process rights under the Fourteenth Amendment, and the liability of defendant the City and defendant Junginger (in his individual capacity only) for breach of the collective bargaining agreement between the City and the union, of which Servo was a member during the tenure of his employment by the Gresham Police Department. On August 22, 2013, this court dismissed Servo's breach of contract claim with prejudice, based on the stipulation of the parties. This court has federal-question jurisdiction over Servo's remaining claims for violation of his procedural due process rights pursuant to 28 U.S.C. § 1331.

Now before the court are the defendants' motion (#40) for summary judgment as to each of Servo's two remaining claims, the defendants' motion (#61) to strike Servo's supplemental brief (#60) filed May 27, 2014, and styled as a notification of "Supplemental Authorities," and Servo's motion (#63) for leave *nunc pro tunc* to file his supplemental brief. For the reasons set

Page 2 - FINDINGS, RECOMMENDATION, AND ORDER

forth below: (i) Servo's retroactive motion (#63) for leave to file a supplemental brief is granted, Servo's supplemental brief (#60) filed May 27, 2014, is deemed timely filed, and in consequence defendants' motion (#61) to strike is denied, and (ii) I recommend that defendants' motion (#40) for summary judgment be granted.

## LEGAL STANDARD

### I.    Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party taking the position that a material fact either "cannot be or is genuinely disputed" must support that position either by citation to specific evidence of record "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," by showing that the evidence of record does not establish either the presence or absence of such a dispute, or by showing that an opposing party is unable to produce sufficient admissible evidence to establish the presence or absence of such a dispute. Fed. R. Civ. P. 56(c). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may

neither make credibility determinations nor perform any weighing of the evidence. *See, e.g.,*

*Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing*

*Products, Inc.*, 530 U.S. 133, 150 (2000).

## II.    Motion to Strike

### A.    Federal Civil Procedure Rule 12(f)

Federal Civil Procedure Rule 12 provides that the district courts "may strike from a

pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter"

on their own initiative or pursuant to a party's motion. Fed. R. Civ. P. 12(f). The disposition of a

motion to strike is within the discretion of the district court. *See Federal Sav. & Loan Ins. Corp.*

*v. Gemini Management*, 921 F.2d 241, 244 (9th Cir. 1990). Motions to strike are disfavored and

infrequently granted. *See Stabilisierungsfonds Für Wein v. Kaiser, Stuhl Wind Distribs. Pty.,*

*Ltd.*, 647 F.2d 200, 201, 201 n.1 (D.C. Cir. 1981); *Pease & Curren Refining, Inc. v. Spectrolab,*

*Inc.*, 744 F. Supp. 945, 947 (C.D. Cal. 1990), *abrogated on other grounds by Stanton Road Ass'n*

*v. Lohrey Enters.*, 984 F.2d 1015 (9th Cir. 1993).

### B.    Inherent Power

It is well established that the district courts enjoy an inherent power to manage and

control their own dockets. *See, e.g., Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (affirming

"the power inherent in every court to control the disposition of the causes on its docket with

economy of time and effort for itself, for counsel, and for litigants"). It is clear that this inherent

power includes the authority to sanction procedural impropriety in an appropriate manner. *See,*

*e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (noting that "[a] primary aspect" of

the courts' inherent power "is the ability to fashion an appropriate sanction for conduct which

abuses the judicial process;" holding that because "outright dismissal of a lawsuit . . . is within the court's discretion," in consequence less severe sanctions are "undoubtedly within a court's inherent power as well"); *Atchison, T. & S.F. Ry. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998) ("well established that district courts have inherent power to control their dockets and may impose sanctions, including dismissal, in the exercise of that discretion") (citations, internal quotation marks omitted); *see also Lamos v. Astrue*, 2008 U.S. App. LEXIS 9143 (9th Cir. 2008) (unpublished disposition) (affirming inherent power of the courts to strike documents other than pleadings from the docket); *Centillium Communs., Inc. v. Atl. Mut. Ins. Co.*, 2008 U.S. Dist. LEXIS 20719 (D. Cal. 2008) (striking a procedurally improper motion pursuant to the court's inherent power).

## III.    Leave to File Supplemental Briefing

After a non-moving party has filed a brief in opposition to another's party's motion for summary judgment, leave of court is required before that party may file a sur-response or other supplemental brief in further opposition to the motion. *See* L.R. 7-1(f)(3), 56-1(b). District courts have discretion whether or not to grant such leave. *See, e.g., United States ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1203 (9th Cir. 2009). The courts of this circuit have exercised discretion to grant such leave upon a showing of good cause by the party seeking to file a supplemental legal memorandum. *See, e.g., Reiger v. Nevens*, Case No. 3:12-CV-218-MM-VPC, 2014 U.S. Dist. LEXIS 15912, *7-8 (D. Nev. February 7, 2014); *Wilridge v. Marshall*, Case No. C 09-2236 SI, 2014 U.S. Dist. LEXIS 37772, *1 n.1 (D. Cal. March 21, 2014).

# MATERIAL FACTS

## I.     The Parties

Plaintiff Servo is a former member of the Gresham Police Department (the "GPD") who served the City as a Detective at the time his employment was terminated as discussed herein.

Defendant Junginger is and at all material times was the Chief of Police for the City. Defendant Cummins was at all material times a Captain of the GPD, although he has since received a promotion to Deputy Chief of the GPD. Defendant the City is a municipality of the State of Oregon.

## II.    History of the Parties' Dispute[1]

The City hired Servo as an "Entry Level Police Officer" in June 1999. In 2006, Servo was promoted to the rank of Detective, and began serving as the GPD Lead Firearms Instructor.

On January 28, 2011, Servo attended a firearms training course with other GPD officers in Troutdale, Oregon. Servo attended the training in a vehicle owned and made available to him for GPD-related purposes by the City. Servo brought several firearms with him to the training course, including the long gun he used during the training, as well as hundreds of rounds of live ammunition. Because the City did not provide firearm lockboxes for the use of GPD officers in City-owned unmarked police vehicles, the firearms were unsecured within the vehicle when not in use at the training, notwithstanding applicable regulations requiring that long guns never be left both unattended and unsecured. In addition, Servo had with him in the vehicle certain police files maintained in connection with investigations on which Servo was working at the time, in

---

[1] Except where otherwise indicated, the following recitation constitutes my construal of the evidentiary record in light of the legal standard governing motions for summary judgment under Federal Civil Procedure Rule 56.

clear violation of written GPD policy.

After the training concluded, Servo and other attendees retired to the McMenamins Edgefield facility for drinks. Servo drove to the Edgefield in the City vehicle he had used to attend the training, notwithstanding that such use of City vehicles was prohibited and that other officers drove back to Gresham to drop off their City vehicles and retrieve their personal vehicles between the training and the social gathering at the Edgefield. From approximately 4:00 p.m. until approximately midnight, Servo drank at the Edgefield, becoming sufficiently intoxicated to suffer impaired memory of the ensuing events.

At approximately midnight that evening, Servo attempted unsuccessfully to drive home in the City vehicle he had used to attend the training. Approximately 8-10 miles away from the Edgefield, Servo crashed the car into an irrigation ditch and, because of the angle at which the car became lodged in the ditch, was unable to get the car back out. Another driver saw the car stuck in the ditch, and after trying unsuccessfully to get an intelligible response from Servo called 911. When Multnomah and Clackamas County law enforcement responded to the call at approximately 12:30 a.m., they learned that Servo was a GPD detective in a GPD-issued vehicle, and they immediately notified the GPD. The GPD sent two Sergeants to the location, one of whom was the president of the union and would serve as Servo's union representative.

Clackamas County law enforcement personnel on the scene, detecting a strong odor of alcohol on Servo's person and noticing that his speech was slurred and that he had difficulty maintaining his balance, requested that Servo submit to a Breathalyzer test. Servo refused, notwithstanding the fact that his union representative urged him to cooperate with the request, and a Clackamas County Deputy arrested him on suspicion of Driving Under the Influence of

Page 7 - FINDINGS, RECOMMENDATION, AND ORDER

Intoxicants ("DUII").  Pursuant to Or. Rev. Stat. 813.100, Servo's refusal to submit to the

Breathalyzer test resulted in automatic one-year suspension of his driver's license (although that

suspension did not become effective until February 28, 2011).  The Deputy reported that Servo

twice stated "You know, it's just me here and it's just you here," without clarification of his

meaning but causing the deputy to believe that Servo was requesting "consideration" from a

fellow law enforcement officer.  The arrest resulted in a several-day news cycle of unfavorable

publicity for the GPD.  It is Servo's position that because of the bad publicity that arose out of the

incident and/or because of Servo's refusal to submit to a Breathalyzer test, Junginger developed

and harbored a retaliatory animus against him.

On January 31, 2011, Junginger approved a formal recommendation that an internal

affairs ("IA") investigation be initiated to determine whether Servo's conduct violated six

specified rules and regulations applicable to GPD officers, namely General Order ("G.O.")

220.100 (Know and Obey Department Orders), G.O. (Conduct Unbecoming a Member), G.O.

210.100 (Obey the law), G.O. 220.090(4) (Intoxicants), G.O. 410.050 (Operation of a Vehicle),

and Gresham Administrative Rule ("G.A.R.") 6.45.020 (Use of City Vehicle).  Junginger

assigned former defendant Lieutenant Jeff Hansen to conduct the IA investigation.  That same

day, Servo was placed on paid administrative leave and issued a "Charge Sheet" enumerating the

six rules and regulations set forth above.

On February 4, 2011, Hansen conducted an initial interview of Servo, with Servo's union

representative present.  Prior to the interview, Hansen provided Servo with copies of all of the

documents he had gathered at that time, including the police reports from the car accident and

internal departmental memoranda.  At that time, Hansen reiterated to Servo the six rules and

regulations that Servo was charged with violating.

On February 7, 2011, Servo began a 21-day in-patient alcohol-abuse treatment program. While Servo was pursuing that program, Hansen conducted and recorded interviews of GPD officers who had been present at the Edgefield on January 28, 2011, as well as other witnesses to Servo's conduct at the Edgefield and to the vehicle accident of later that evening. In early April, Hansen prepared a 16-page IA report of the results of his investigation. Hansen's report included discussion of the six rules and regulations Servo was charged with violating. Hansen's report was provided to Servo, together with copies of the underlying documentary evidence.

On February 28, 2011, the effective date of the automatic suspension of Servo's driver's license, Servo was moved from paid to unpaid administrative leave. At that time, Servo began drawing on his accumulated leave time in order to continue drawing pay from the GPD. It is undisputed that Servo had available to him a grievance procedure under the collective bargaining agreement between the union and the GPD with which to challenge his placement on unpaid administrative leave, and it is also undisputed that he did not elect to avail himself of that procedure.

On April 13, 2011, after Servo and his union representative had had time to review the report and underlying evidence, Hansen conducted a second and more detailed interview of Servo with Servo's union representative and a union attorney present. Over the course of this interview, Servo was given the opportunity to present his own account of the events of January 28 and 29, 2011, and to rebut any of the evidence summarized in Hansen's report. During that interview, Servo confirmed that he had read and reviewed the report and underlying evidence, and that he understood the six rules and regulations he was charged with violating. Servo did not

Page 9 - FINDINGS, RECOMMENDATION, AND ORDER

dispute any of the substantive facts of Hansen's report.  Following the interview, Hansen

presented all of his findings to defendant Cummins, who at that time was in charge of IA

investigations involving members of the unit to which Servo was assigned.

On April 19, 2011, Cummins prepared a written memorandum summarizing Servo's

conduct and analyzing whether Servo's conduct violated each of the six rules and regulations he

was charged with violating.  Cummins opined that Servo's conduct was in clear violation of all

six of the rules and regulations,[2] and recommended that Servo's employment be terminated in

consequence.  It appears that Junginger may have played a role in editing Cummins' report before

it was formally presented to him.

After Cummins' report was formally presented to Junginger, Junginger approved its

findings and its recommendation.  On April 26, 2011, Junginger sent Servo a written "Notice of

Intent to Discipline" advising that Junginger and the GPD had concluded that Servo's conduct

had violated all of the rules and regulations he was charged with violating, that the GPD intended

to terminate Servo employment, and that Servo had the right to a pre-discipline hearing.

Junginger also called Servo on the telephone to advise him of the contents of the Notice.  On

April 28, 2011, Junginger sent Servo a "Notice of Charges and Due Process Meeting" that

summarized the results of the IA investigation, summarized the rules and regulations Servo had

been charged with violating, summarized matters of concern raised by the IA investigation, and

reiterated Servo's right to a pre-termination hearing.  Junginger subsequently provided Servo with

---

[2] In addition, Cummins opined that if Servo's remarks to the Clackamas County deputy
constituted a request for "consideration," that request "would" have further violated G.O. 210.170
(Using Position), and further opined that it "appear[ed]" that Servo was in fact requesting such
consideration.  Nevertheless, Cummins did not formally conclude that Servo violated G.O.
210.170.

copies of Cummins' and Hansen's reports.

On May 10, 2011, a pre-termination hearing was conducted with Servo and his union representative present. Servo did not dispute the substance of any of the IA investigatory findings. On May 11, 2011, Junginger wrote to Servo that after consideration of Servo's statements at the hearing, he and the GPD intended to go forward with Servo's termination.

On May 17, 2011, the union advised Junginger that it did not intend to grieve Servo's termination. The union's decision did not foreclose Servo's express right under the Collective Bargaining Agreement between the union and the GPD to pursue a grievance on his own behalf, but Servo did not elect to do so.

## ANALYSIS

I.    **Defendants' Motion (#61) to Strike; Servo's Motion (#63) for Leave *Nunc pro Tunc* to File Supplemental Briefing; Servo's Filing (#60) of May 27, 2014**

Defendants filed their motion (#40) for summary judgment on March 31, 2014. On April 23, 2014, two days after Servo's opposition thereto was due, Servo filed a motion for extension of time in which to file his opposition. I granted that motion, and directed Servo to file his opposition memorandum by May 2, 2014. Servo filed an opposition memorandum on May 2, 2014, together with a motion for leave to file an opposition longer than the applicable page limit. The motion for leave to file excess pages was granted, and Servo filed an amended opposition memorandum two days later, on May 4, 2014. Defendants filed a reply memorandum in support of their motion for summary judgment on May 19, 2014.

On May 27, 2014, Servo filed a document (#60) styled as "Supplemental Authorities" in support of his opposition to defendants' summary judgment motion. Inspection of the document

Page 11 - FINDINGS, RECOMMENDATION, AND ORDER

establishes that, rather than advice to the court of any recent development in applicable law, it constitutes a legal memorandum containing argument and analysis in opposition to arguments raised in defendants' moving papers. On May 30, 2014, defendants moved to strike the unauthorized supplemental brief as being in clear violation of Local Rule 7-1(f). On June 3, 2014, Servo moved for leave *nunc pro tunc* to file the supplemental brief.

I agree with defendants that Servo's filing of May 27, 2014, is patently a supplemental brief requiring leave of court before it may be construed as properly filed. I further agree with defendants that Servo offered no showing of good cause at the time he filed his supplemental brief to explain why he did not include the arguments and authorities discussed therein within his over-length opposition memorandum of May 4, 2014. Indeed, even in support of his motion for leave *nunc pro tunc* to file his supplemental brief he does not purport to offer any such showing. Nevertheless, finding that it is in the interest of justice to permit Servo an opportunity to be fully heard prior to consideration of the merits of defendants' summary judgment motion, I exercise my discretion to grant Servo's motion (#63) for leave to file a supplemental brief *nunc pro tunc*, construe Servo's filing (#60) of May 27, 2014, as a timely filed supplemental brief in opposition to defendants' summary judgment motion, and deny defendants' motion (#61) to strike.

## II.    Motion (#40) for Summary Judgment

As noted above, defendants move for summary adjudication of each of Servo's two remaining claims, each of which is a Section 1983 claim for violation of his procedural due process rights under the Fourteenth Amendment, one alleged against individual defendants Junginger and Cummins in their individual capacities and one alleged against municipal defendant the City on a *Monell* theory.

Page 12 - FINDINGS, RECOMMENDATION, AND ORDER

> § 1983 affords a "civil remedy" for deprivations of federally protected rights
> caused by persons acting under color of state law without any express requirement
> of a particular state of mind.  Accordingly, in any § 1983 action the initial inquiry
> must focus on whether the two essential elements to a § 1983 action are present:
> (1) whether the conduct complained of was committed by a person acting under
> color of state law; and (2) whether this conduct deprived a person of rights,
> privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535 (1981).  No party herein disputes that, at all material times, all defendants acted under color of state law.   The crux of the parties' dispute over the merits of defendants' dispositive motion is, instead, the question whether Servo suffered any deprivation of his Fourteenth Amendment procedural due process rights.

The Fourteenth Amendment of the United States Constitution affords government employees with a property interest in continued employment a guaranteed right of due process before their employment can be terminated.  *See* U.S. Const. amend. XIV, § 1; *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (citations omitted). Whether or not a property interest in any given employment exists is not a matter of constitutional law, however, but rather must be determined by reference to some "independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).  Here, defendants do not dispute that Oregon law afforded Servo a property interest in his continued employment by the City and by the GPD.

To prevail on a procedural due process claim, a plaintiff must establish both a "deprivation of a constitutionally protected liberty or property interest and denial of adequate procedural protection." *Krainski v. State ex rel. Bd. of Regents*, 616 F.3d 963, 970 (9th Cir. 2010), *citing Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

Page 13 - FINDINGS, RECOMMENDATION, AND ORDER

The question of "what process is due" is more easily asked than answered. As the Supreme Court has frankly acknowledged, "for all its consequence, 'due process' has never been, and perhaps never can be, precisely defined." *Lassiter v. Department of Social Servs.*, 452 U.S. 18, 24, 68 L. Ed. 2d 640, 101 S. Ct. 2153 (1981). Rather, the phrase "expresses the requirement of 'fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty." *Id.* As a result, deciphering and applying the Due Process Clause is, at best, "an uncertain enterprise." *Id.*

Precisely what procedures the Due Process Clause requires in any given case is a function of context. After all, "unlike some legal rules," due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895, 6 L. Ed. 2d 1230, 81 S. Ct. 1743 (1961) (*quoting Joint Anti-Fascist Comm'n v. McGrath*, 341 U.S. 123, 162, 95 L. Ed. 817, 71 S. Ct. 624 (1951) (Frankfurter, J., concurring)) (quotation marks omitted). Rather, **it "is flexible and calls for such procedural protections as the particular situation demands."** *Morrissey* [*v. Brewer*], 408 U.S. [471,] 481 [(1972)]. As this court has observed, "the determination of what procedures satisfy due process [in a given situation] depends upon an analysis of the particular case in accordance with the three-part balancing test outlined in *Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976)." *Orloff v. Cleland*, 708 F.2d 372, 378-79 (9th Cir. 1983) (parallel citations omitted). In *Mathews*, the Supreme Court stated:

> **Identification of the specific dictates of due process generally requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.**

*Mathews*, 424 U.S. at 335.

*Brewster*, 149 F.3d at 983 (emphasis supplied; modifications original). It is nevertheless well established that "[d]ue process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the [governmental] action and afford them an opportunity to present their objections." *Al Haramain Islamic Found., Inc. v. United States Dep't*

Page 14 - FINDINGS, RECOMMENDATION, AND ORDER

*of the Treasury*, 686 F.3d 965, 985 (9th Cir. 2012), *quoting United Student Aid Funds, Inc. v.*

*Espinosa*, 559 U.S. 260, 272 (U.S. 2010), *quoting Mullane v. Cent. Hanover Bank & Trust Co.*,

339 U.S. 306, 314 (1950). That is, absent circumstances not present here under which pre-

deprivation notice would be impracticable and a full and immediate post-deprivation hearing

would adequate safeguard the claimant's interests (*see e.g. Parratt v. Taylor*, 451 U.S. 527,

539-541 (1981)), due process "requires 'some kind of a hearing' prior to the discharge of an

employee who has a constitutionally protected property interest in his employment." *Loudermill*,

470 U.S. at 542, *quoting Roth*, 408 U.S. at 569-570, *Perry v. Sindermann*, 408 U.S. 593, 599

(1972).

A pre-deprivation hearing satisfies constitutional due process requirements in the public

employment context where the employee receives "oral or written notice of the charges against

him, an explanation of the employer's evidence, and an opportunity to present his side of the

story." *Id.* at 546, *citing Arnett v. Kennedy*, 416 U.S. 134, 170-171 (1974), *Goss v. Lopez*, 419

U.S. 565, 581 (1975). "To require more than this prior to termination would intrude to an

unwarranted extent on the government's interest in quickly removing an unsatisfactory

employee." *Id.*

Notwithstanding the foregoing, it is additionally clear that "[a] biased proceeding is not a

procedurally adequate one. At a minimum, Due Process requires a hearing before an impartial

tribunal." *Clements v. Airport Auth.*, 69 F.3d 321, 333 (9th Cir. 1995), *citing Ward v. Village of*

*Monroeville*, 409 U.S. 57, 60-62 (1972).

Defendants' fundamental position is that Servo – who, as noted above, has never disputed

the substance of the charges underlying his termination, whether prior to or after initiating this

litigation -- received all process due to him under the constitutional framework set forth above (and indeed had additional process available to him post-termination which he elected not to pursue), and therefore never suffered the constitutional deprivation requisite to both his claim against the individual defendants and his claim against the municipal defendant. Servo challenges the adequacy of the process he concedes he received, on several grounds. I address each of Servo's arguments in turn.

As a preliminary matter, Servo suggests without particularity that notwithstanding the facial adequacy under applicable Fourteenth Amendment jurisprudence of the process he received prior to his termination, he was entitled to some unspecified heightened degree of process under applicable but unidentified provisions of Oregon law and/or City regulation. Servo cites no apposite case law in support of that proposition, and I am aware of no support therefor. While it appears uncontroversial that the availability of state- or municipality-mandated process could in some degree impact analysis of the adequacy of process received under *Brewster* and *Matthews*, *supra*, the existence of such non-federal process requirements cannot modify the constitutional procedural minima discussed above, or suggest that failure to comply with state or municipal procedural rules could, in the absence of any constitutional deprivation, give rise to a cause of action under the Fourteenth Amendment. Indeed, while it does not appear that the Ninth Circuit has expressly weighed in on the issue, other circuits have expressly held that "notice and an opportunity to be heard . . . is enough to satisfy due process" notwithstanding any potential violation of any applicable "state procedural scheme." *Harris v. Mills*, 572 F.3d 66, 75-76 (2d Cir. 2009). If Servo were able to identify with precision any state or municipal procedural protections to which he was entitled but which he did not receive, it is possible that he might in

Page 16 - FINDINGS, RECOMMENDATION, AND ORDER

consequence have a cause of action therefor under Oregon law, but nothing in the record before this court suggests that applicable state or municipal law entitles him to any heightened degree of procedural due process guaranteed under the Fourteenth Amendment, the deprivation of which could be actionable under Section 1983.

In addition, Servo offers seven specific arguments in support of his challenge to the adequacy of the process he received, only one of which is properly grounded in applicable procedural due process principals. Of the six arguments lacking a basis in applicable law, Servo argues first that the process he received was inadequate under the Fourteenth Amendment in part because defendants violated his rights under the Fifth Amendment by considering his refusal to submit to a Breathalyzer test on the night he drove the City vehicle into the ditch. This argument necessarily fails due to the absence of evidence to create any question of fact as to whether Servo's refusal to submit to the Breathalyzer test motivated his termination, to the absence of any support in law or in logic for the proposition that consideration of such a refusal in the context of a termination decision would constitute a deprivation of procedural due process rights, and to the fact that the Oregon courts have considered and soundly rejected the theory that the Fifth Amendment privilege against self-incrimination is implicated in connection with a motorists's refusal to submit to a Breathalyzer test, *see, e.g., State v. Gardner*, 52 Or. App. 663, 668-670 (1981).

Servo next argues that defendants violated his procedural due process rights by "fail[ing] to maintain the confidentiality of the IA [investigation]." Again, analysis of the record discloses no basis for Servo's assertion that the "confidentiality" of the IA investigation was violated, and in any event Servo does not offer any explanation of the mechanism by which any failure to

maintain such confidentiality, if established, would have violated his procedural due process rights to reasonable pre-termination notice and opportunity to be heard and to present rebuttal evidence.

Citing eight incidents (and/or classes of incident) of other GPD officers who committed infractions involving alcohol, Servo additionally argues that the process he received was inadequate because the discipline he ultimately received was purportedly harsher than that received by other "similarly situated" GPD employees. Again, this argument fails both on its facts, in that none of the other incidents involved conduct of the same order of egregiousness as Servo's conduct at issue here, and on the law, in that there is no authority for the proposition that unequal application of discipline (in the absence of evidence of bias) could constitute a deprivation of due process, which requires only reasonable notice and opportunity to be heard before the imposition of discipline.

Servo further argues that his due process rights were violated because defendants, chiefly Junginger, have purportedly offered rationales for Servo's termination that have shifted over time since the date the termination took place, and/or have offered impermissible rationales premised on improper bases including primarily his ultimate guilty plea to charges of driving under the influence of intoxicants. This argument, likewise, is necessarily unavailing. First, the record of defendants' testimony regarding the rationale underlying Servo's termination cannot reasonably be construed as supporting Servo's characterization that it has shifted or changed over time in any significant respect. Second, there is no support for the proposition that consideration of Servo's DUII guilty plea, even if such consideration in the context of a termination decision were in any sense improper (another proposition for which I am aware of no support), could have been in

Page 18 - FINDINGS, RECOMMENDATION, AND ORDER

violation of Servo's procedural due process rights.  The Fourteenth Amendment guarantees that a state employee with a property interest in employment will receive reasonable notice and an opportunity to be heard before his or her employment will be terminated, but it does not guarantee that the ultimate decision to terminate will be fair or appropriate, or that inappropriate evidence will not be considered in connection with that decision.  In the event Servo believed his termination was wrongful by virtue of reasons other than the purported deprivation of his procedural due process rights, a Fourteenth Amendment claim is not the correct mechanism for the vindication of whatever rights he believes were in fact violated.

Servo further argues that his procedural due process rights were violated because under the union's collective bargaining agreement with the GPD, he could only be fired for "just cause," and his termination here was not just.  Again, if Servo believes his termination was in breach of contract, his recourse lies in a breach of contract claim, not in a procedural due process claim. There is no support for the proposition that such a breach of contract could give rise to a Fourteenth Amendment claim.  Moreover, in light of Servo's failure to deny any of the operative facts expressly relied upon by defendants in reaching their termination decision, there is no support in the record for Servo's contention that his termination was in violation of the contractual "just cause" provision.

Servo additionally argues that defendants violated his procedural due process rights by failing to offer him "reasonable accommodation" for his "disability" of alcoholism before terminating him.  Like the other five arguments discussed immediately above, this argument lacks any defensible basis in law. First, it is undisputed that when he amended his complaint herein, Servo voluntarily abandoned his ADA disability claim premised on the theory that he was

fired for his disability of alcoholism, thereby waiving that claim. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) (citations omitted). Second, there is no support for the proposition that termination in violation of the ADA prohibition against disability discrimination could constitute a violation of an employee's procedural due process rights; indeed, the Second Circuit, in *Harris, supra*, expressly rejected the theory that the ADA reasonable accommodation requirement could be implicated in a procedural due process claim, *see Harris*, 572 F.3d at 75-76. Third, even if Servo had not waived his ADA claim through abandonment, it is clear (even on the *arguendo* assumption that Servo is disabled by alcoholism for ADA purposes) that the courts of the Ninth Circuit routinely and uniformly distinguish between *alcoholism*, which may be a disabling condition, and *alcohol-related misconduct*, for which an employee may be terminated (if such misconduct would have warranted termination absent the involvement of alcohol) without regard to the protections afforded by the ADA, *see, e.g., Newland v. Dalton*, 81 F.3d 904, 906 (9th Cir. 1995) (and cases cited therein). The evidence of record establishes here that Servo was terminated for his misconduct, rather than for being a person with a disability.

Finally, Servo offers one argument with a discernible basis in applicable law, namely that Junginger was so biased against him as to render the process he received a sham. As noted above, "[a] biased proceeding is not a procedurally adequate one. At a minimum, Due Process requires a hearing before an impartial tribunal." *Clements*, 69 F.3d at 333 (citation omitted). The flaws in this final argument are factual and evidentiary rather than legal. First, Servo's argument is that Junginger became unconstitutionally biased against him, not due to Servo's membership in any protected class, to Junginger's improper pecuniary interests, or to any dispute or conflict arising prior to the events underlying this lawsuit, but rather solely as a result of the misconduct

Page 20 - FINDINGS, RECOMMENDATION, AND ORDER

cited as the reason for Servo's termination.  Bias motivated by an employee's workplace

misconduct justifying termination is not the kind of bias that renders a decisionmaker impartial

for constitutional due process purposes.  Second, Servo does not argue that Junginger's purported

bias caused Junginger to find that Servo's conduct was in violation of established GPD standards

of conduct where he otherwise would not have – as noted above, Servo has never denied any of

the misconduct he was charged with – but rather that Junginger's bias is discernible in that

Junginger may have formed the conclusion that termination was the appropriate sanction for

Servo's misconduct prior to the pre-termination hearing.  But procedural due process does not

require that a decisionmaker come to a pre-termination hearing with no preconceived notions as

to what level of discipline constitutes an appropriate sanction for a given infraction, but rather

that the decisionmaker give due consideration to the evidence for and against the conclusion that

the infraction was committed in the first instance, and/or to any mitigating circumstances.  The

record here is void of evidence that Junginger would not have considered rebuttal evidence or

evidence of mitigating circumstances had any such been offered, and indeed Servo has never

disputed the charges against him nor ever offered evidence that his conceded misconduct was

excusable under the circumstances.  Third, Servo has simply not identified evidence on the basis

of which a finder of fact could reasonably conclude that Junginger harbored any improper bias

against him.

In the absence of any question of material fact as to the impartiality of the decisionmakers

who terminated Servo's employment, Servo received constitutionally adequate pre-termination

process, which alone is sufficient to satisfy the procedural due process requirements of the

Fourteenth Amendment.  In addition, it is undisputed that Servo had available to him additional,

Page 21 - FINDINGS, RECOMMENDATION, AND ORDER

post-termination process that he elected not to pursue, for his own reasons. Because he received all of the process guaranteed under the Fourteenth Amendment, his constitutional rights thereunder were not deprived, and his claims against both the individual defendants and the municipal defendant necessarily fail as a matter of law. In consequence, it is unnecessary to consider the parties' alternative arguments regarding whether the individual defendants are entitled to qualified immunity and as to whether Servo has adduced facts sufficient to give rise to the City's municipal liability under *Monell*. I therefore recommend that defendants' motion (#40) for summary judgment be granted.

## CONCLUSION

For the reasons set forth above, Servo's motion (#63) for leave *nunc pro tunc* to file a supplemental brief is granted, Servo's supplemental brief (#60) filed May 27, 2014, is deemed timely filed, defendants' motion (#61) to strike is denied, and defendants' motion (#40) for summary judgment should be granted. A final judgment should be prepared.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

/ / /

/ / /

/ / /

/ / /

Page 22 - FINDINGS, RECOMMENDATION, AND ORDER

copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings

and Recommendation will go under advisement.


Dated this 25h day of June, 2014.

Honorable Paul Papak
United States Magistrate Judge